BILAL A. ESSAYLI
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
PAUL (BART) GREEN (Cal. Bar No. 300847)
Assistant United States Attorney
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-0805
Email: Paul.Green@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| OLEN PROPERTIES CORP.,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES SMALL BUSINESS ADMINISTRATION, *et al.*,<br><br>Defendants. | No. 8:24-cv-01908-JWH-ADS<br><br>**DEFENDANTS' RESPONDING BRIEF / OPPOSITION TO MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**<br><br>Hearing Date: February 10, 2026<br>Hearing Time: 10 a.m.<br>Location: 9D<br><br>Honorable John W. Holcomb<br>United States District Court |

# TABLE OF CONTENTS

DESCRIPTION PAGE


TABLE OF AUTHORITIES .......... i

I. INTRODUCTION .......... 1

II. LEGAL FRAMEWORK .......... 2

A. The SBA's Section 7(a) Loan Program .......... 2

B. Ineligible Business Types under 13 C.F.R. § 120.110 .......... 2

C. The CARES Act and the PPP .......... 3

D. The First Interim Final Rule .......... 4

E. The Economic Aid Act .......... 5

F. Forgiveness and Review of PPP Loans .......... 5

III. FACTUAL AND PROCEDURAL BACKGROUND .......... 7

IV. STANDARD OF REVIEW .......... 9

V. ARGUMENT .......... 10

A. The SBA's Classification of Olen as a Passive Real Estate Business Is Supported by Substantial Evidence .......... 10

B. The ALJ's Reliance on SBA's 2019 Standard Operation Procedures Was Not Arbitrary, Capricious, or an Abuse of Discretion .......... 13

C. The Application of the Long-standing Passive Business Rule to Olen's PPP Loan Forgiveness Application Was Not Arbitrary, Capricious, or Contrary to the CARES Act .......... 14

VI. CONCLUSION .......... 17

# TABLE OF AUTHORITIES

DESCRIPTION PAGE

**Cases**

*Anjac Fashion Buildings, LLC v. United States Small Bus. Admin.*, 2024 WL 5317303 (C.D. Cal. July 15, 2024) .................... *passim*

*Bruckner Truck Sales, Inc. v. Guzman*, 148 F.4th 341 (5th Cir. 2025) .................... 16

*Camp v. Pitts*, 411 U.S. 138 (1973) .................... 10

*DACO Invs., LLC v. United States Small Bus. Admin.*, 2024 WL 750594 (W.D. La. Feb. 22, 2024) .................... 16

*Diocese of Rochester v. SBA*, 466 F. Supp. 3d 363 (W.D.N.Y. June 10, 2020) .................... 15, 17

*DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960 F.3d 743 (6th Cir. 2020) .................... 16, 17

*Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414 (2021) .................... 9

*Forest View Rehab. & Nursing Ctr., LLC v. United States Small Bus. Admin.*, 2024 WL 5247837 (N.D. Ill. Dec. 30, 2024) .................... 17

*Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280 (2010) .................... 14

*Herrera v. U.S. Citizenship & Immig. Servs.*, 571 F.3d 881 (9th Cir. 2009) .................... 9, 11

*In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239 (11th Cir. 2020) .................... *passim*

*Judulang v. Holder*, 565 U.S. 42 (2011) .................... 9

*Lands Council v. Powell*, 379 F.3d 738 (9th Cir. 2004) .................... 10

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) .................... 15

*Nat'l Assoc. of Home Builders v. United States Small Bus. Admin.*, 2021 WL 4458660 (E.D. Mich. Sept. 28, 2021) .................... 16

*Natural Res. Def. Council v. U.S. Dep't of the Interior*, 113 F.3d 1121 (9th Cir. 1997) .................... 9

*Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468 (9th Cir. 1994) .................... 9, 13

*Occidental Eng'g Co. v. INS*,
753 F.2d 766 (9th Cir. 1985) .......... 10

*Olenicoff v. UBS AG*,
2012 WL 1192911 (C.D. Cal. Apr. 10, 2012) .......... 7

*Peck v. Thomas*,
697 F.3d 767 (9th Cir. 2012) .......... 9

*Pharaohs GC, Inc. v. United States Small Bus. Admin.*,
990 F.3d 217 (2d Cir. 2021) .......... 15, 16

*Providence Yakima Med. Ctr. v. Sebelius*,
611 F.3d 1181 (9th Cir. 2010) .......... 9

*Ramspeck v. Fed. Trial Examiners Conf.*,
345 U.S. 128 (1953) .......... 14

*Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agric.*,
499 F.3d 1108 (9th Cir. 2007) .......... 9

*SBA v. McClellan*,
364 U.S. 446 (1960) .......... 2

*Seville Indus., L.L.C. v. United States Small Bus. Admin.*,
144 F.4th 740 (5th Cir. 2025) .......... 4, 5

*Springfield Hosp., Inc. v. Guzman*,
28 F.4th 403 (2d Cir. 2022) .......... 6

*United States v. Kimbell Foods, Inc.*,
440 U.S. 715 (1979) .......... 2

**Statutes**

5 U.S.C. § 556 .......... 14

5 U.S.C. § 701 .......... 9

5 U.S.C. § 706 .......... 9, 10, 11

15 U.S.C. § 632 .......... 2

15 U.S.C. § 633 .......... 2, 5

15 U.S.C. § 636 .......... *passim*

15 U.S.C. § 636m .......... 5, 6

15 U.S.C. § 9005 .......... 4

15 U.S.C. § 9012 .......... 4

**Other**


13 C.F.R. § 120.1 .......... 2
13 C.F.R. § 120.100 .......... 2
13 C.F.R. § 120.110 .......... *passim*
13 C.F.R. § 120.160 .......... 2
13 C.F.R. § 134.1201 .......... 7, 8
13 C.F.R. § 134.1202 .......... 7
13 C.F.R. § 134.1207 .......... 7
13 C.F.R. § 134.1209 .......... 7
13 C.F.R. § 134.1210 .......... 7
85 Fed. Reg. 20811 .......... 3, 4, 5
85 Fed. Reg. 20812 .......... 4. 5. 6
85 Fed. Reg. 20813 .......... 4, 6
85 Fed. Reg. 23450 .......... 5
85 Fed. Reg. 33010 .......... 7
85 Fed. Reg. 38304 .......... 6
85 Fed. Reg. 38306 .......... 6
86 Fed. Reg. 3692 .......... 6
86 Fed. Reg. 8283 .......... 6

# I. INTRODUCTION

Plaintiff Olen Properties Corporation ("Olen")—a large real estate management company founded by billionaire Igor Olenicoff[1]—challenges the decision by the United States Small Business Administration ("SBA") to deny Olen's application for forgiveness of a multi-million dollar loan Olen received during the COVID-19 pandemic through the Paycheck Protection Program ("PPP"). Olen seeks review under the Administrative Procedure Act ("APA") and argues that the SBA's denial was arbitrary, capricious, and contrary to law. The SBA's decision was not.

Congress created the PPP to help small businesses and their employees at the outset of the COVID-19 pandemic. Congress charged the SBA with the program's administration. The loans were issued by private lenders but guaranteed by SBA, and lenders rapidly distributed $800 billion in potentially forgivable loans to businesses across the country. Unfortunately, some loans went to ineligible borrowers. Because borrowers received loans based on their self-certifications, an ineligible borrower typically is told about its ineligibility for the first time when SBA denies its application for loan forgiveness.

That is what happened here. Olen received a $5.37 million PPP loan. When Olen applied for loan forgiveness, SBA denied its application, concluding that Olen was ineligible to receive a loan in the first place because it was an ineligible passive entity. Olen challenged the determination before an administrative law judge, who reviewed the record evidence and affirmed the SBA's denial.

Under the deferential standard of review prescribed by the APA, the record establishes that the SBA's decision, like the ALJ's, was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The Court should deny Olen's Motion for Judgment on the Administrative Record (Dkt. 46) and enter judgment

---

[1] *Forbes* profile on Olenicoff: https://www.forbes.com/profile/igor-olenicoff/ (last accessed on Oct. 22, 2025).

in favor of the SBA.[2]

## II. LEGAL FRAMEWORK

### A. The SBA's Section 7(a) Loan Program

To promote the interests of small-business concerns and the economic vitality of the nation, Congress endowed the SBA, under § 7(a) of the Small Business Act, 15 U.S.C. § 636(a) ("**Section 7(a)**"), with broad discretion to provide a wide variety of financial assistance to small-business concerns. *See SBA v. McClellan*, 364 U.S. 446, 447 (1960); 13 C.F.R. § 120.1. While SBA financial assistance can take various forms, in practice the SBA guarantees loans made by private lenders rather than disbursing funds directly to borrowers. *See United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 719 (1979). Typically, SBA guarantees loans by private lenders rather than disbursing funds directly. *See In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1248 (11th Cir. 2020).

Ordinarily, to qualify for an SBA general business loan, a small business must, among other requirements, demonstrate that the desired credit is not available elsewhere on reasonable terms. 15 U.S.C. § 632(h); 13 C.F.R. §§ 120.100(e), 120.101. For loans over $25,000, the small business must meet the lender's collateral requirements for similar non-SBA guaranteed loans, SOP 50 10 6 Pt. 2, § B, Ch. 1(C), ¶ 3.e.ii, at 258. Holders of 20 percent or more ownership shares in the applicant must personally guarantee the loan. 13 C.F.R. § 120.160(a).

### B. Ineligible Business Types under 13 C.F.R. § 120.110

Under the authority conferred on the SBA Administrator to adopt general policies and rules regarding the grant or denial of SBA loans (15 U.S.C. §§ 633(d), 634(b)(6)), the SBA, over time, has determined that SBA business loans should not be made available to certain types of businesses, including non-profit businesses, legal gambling

---

[2] Pursuant to the Court's order (Dkt. 45), the Scheduling Conference, and the Joint Rule 26(f) Report (Dkt. 39), Defendant submits this Responding Brief rather than a cross-motion for judgment on the administrative record.

establishments, government-owned entities, faith-based concerns, businesses owned or managed by persons with criminal histories, businesses engaged in political activities or lobbying, as described under SBA's ineligibility regulation. 13 C.F.R. § 120.110. Most relevant here, among the rule's exclusions is "[p]assive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds (except Eligible Passive Companies under § 120.111)" *Id.* § 120.110(c).

The SBA's SOP 50 10 6 was in effect at the time of Olen's loan application. *See* SBA SOP 50 10 6, Loan Processing, https://www.sba.gov/document/sop-50-10-lender-development-company-loan-programs. The SOP explicitly excludes landlords and real estate developers from Section 7(a) loan participation: "Businesses that are primarily engaged in owning or purchasing real estate and leasing it for any purpose are not eligible. For example, shopping centers, salon suites, and similar business models that generate income by renting space to accommodate independent businesses that provide services directly to the public are not eligible." SOP 50 10 6, Subpart A, Chap. 3, ¶ 105(c), at 1377.

**C. The CARES Act and the PPP**

On March 27, 2020, Congress passed the CARES Act, Pub. L. No. 116-136, 134 Stat. 281, providing for emergency economic assistance and relief to cope with the economic and public-health crises triggered by the COVID-19 pandemic. *See* 85 Fed. Reg. 20811, 20811-12 (Apr. 15, 2020). Among the CARES Act's other measures, Congress included the PPP, CARES Act. § 1102, to extend relief to small businesses experiencing economic hardship as a result of the public-health measures taken to minimize the public's exposure to the COVID-19 virus. *See* 85 Fed. Reg. at 20811; *see also Anjac Fashion Buildings, LLC v. United States Small Bus. Admin.*, No. 2:23-CV-04495-JLS-JPR, 2024 WL 5317303, at *1 (C.D. Cal. July 15, 2024) (discussing Section 7(a) and the CARES ACT in the context of a PPP loan forgiveness case).

Specifically, CARES Act § 1102(a)(2) added a new paragraph (36) to Section 7(a), 15 U.S.C. § 636(a)(36), which authorized SBA to "guarantee [PPP] loans under the

same terms, conditions, and processes as a loan made under [Section 7(a)]," "[e]xcept as otherwise provided" in paragraph (36). 15 U.S.C. § 636(a)(36)(B). The CARES Act then set forth the ways in which the terms of PPP loans were to differ from other Section 7(a) loans. *Id.* § 636(a)(36)(D)-(R). For example, the CARES Act provided for forgiveness of up to the full principal amount of PPP loans. § 1106(b) (15 U.S.C. § 9005); *see* 85 Fed. Reg. at 20811, 20813.

Under the CARES Act each borrower was limited to a single PPP loan. 15 U.S.C. § 636(a)(36)(G)(i)(IV); 85 Fed. Reg. at 20813 (§ 2.k). All lenders approved by the SBA to make PPP loans were "deemed to have been delegated authority by [SBA] to make and approve [PPP] loans subject to the provisions of [§ 636(a)(36)]," 15 U.S.C. § 636(a)(36)(F)(ii)(I); *see* 85 Fed. Reg. at 20812, 20815 (§§ 1, 3.a). Congress authorized SBA to guarantee up to $659 billion-worth of PPP loans. CARES Act § 1102(b)(1) ($349 billion); Paycheck Protection Program and Health Care Enhancement Act, Pub. L. No. 116-139, 134 Stat. 620, § 101(a)(1) ($310 billion).

To ensure that SBA could make such an enormous sum available to small businesses in so short a time, Congress instructed SBA to issue rules implementing the PPP "[n]ot later than 15 days after" the CARES Act's enactment, 15 U.S.C. § 9012, described as "warp speed for regulatory action," *Gateway*, 983 F.3d at 1262; *see also Seville Indus., L.L.C. v. United States Small Bus. Admin.*, 144 F.4th 740, 743 (5th Cir. 2025). To make that feat possible, Congress also instructed SBA to issue these rules without regard to APA notice-and-comment procedures. 15 U.S.C. § 9012 (citing 5 U.S.C. § 553(b)). Congress also directed that additional non-§ 7(a) lenders be allowed to participate in the PPP and mandated that all PPP lenders be given "delegated authority" to make and approve PPP loans without prior SBA review. *Id.* § 636(a)(36)(F)(ii)(I), (iii).

**D. The First Interim Final Rule**

Under statutory mandate, 15 U.S.C. § 9012, SBA issued several interim final rules ("IFRs") implementing the PPP, the first of which ("First PPP IFR") SBA posted on its

website on April 2, 2020, the day before the program launched. *See* 85 Fed. Reg. 23450 (Apr. 28, 2020) ("On April 2, 2020, [SBA] posted an interim final rule (the First PPP Interim Final Rule),"). The IFR was published in the Federal Register on April 15, 2020. 85 Fed. Reg. 20,811.

The First PPP IFR set forth borrower eligibility and application requirements for PPP loans, 85 Fed. Reg. at 20812-15, and lenders' responsibilities under the streamlined PPP underwriting process, *id.* at 20815-16. As relevant here, the rule stated also that businesses "identified in 13 CFR 120.110" are "not eligible for PPP loans[,]" with the exception of "nonprofit organizations authorized by the [CARES] Act [15 U.S.C. § 636(a)(36)(D)(i)]." *Id.* at 20812; *see also Seville Indus.*, 144 F.4th at 743-744. Notably, the eligibility exclusion at issue here, Section 120.110(c), was never waived for the PPP.

**E. The Economic Aid Act**

The PPP expired on August 8, 2020, *see* Pub. L. No. 116-147, 134 Stat. 660, but the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, (Consolidated Appropriations Act, 2021, Div. N, Title III, Pub. L. No. 116-260, 134 Stat. 1182, 1993-2052) (Dec. 27, 2020)) (the "Economic Aid Act," or "EAA"), reauthorized and extended the program to March 31, 2021, and added another $147.5 billion in loan authority. EAA § 323(a)(1). The EAA also authorized SBA to guarantee so-called "second-draw" PPP loans to certain businesses that obtained "first-draw" PPP loans under the CARES Act, EAA § 311(a) (adding 15 U.S.C. § 636(a)(37)), under the same terms and conditions as first-draw loans, except as the EAA otherwise provided. 15 U.S.C. § 636(a)(37)(B).

**F. Forgiveness and Review of PPP Loans**

Section 1106 of the CARES Act sets out the process for PPP loan forgiveness, *see* CARES Act, Pub. L. No. 116-136 § 1106, 134 Stat. at 297 (codified at 15 U.S.C. § 636m), and allows "eligible recipient[s]" of PPP loans to obtain loan forgiveness on the portions of the loan used for certain enumerated purposes, such as payroll costs and payments for rent, utilities, and mortgage interest, 15 U.S.C. §§ 636m(b)(1)-(8), (d);

Apr. 2020 IFR, 85 Fed. Reg. at 20813. "The amount of loan forgiveness can be up to the full principal amount of the loan and any accrued interest," so long as, among other requirements, "the borrower uses all of the loan proceeds for forgivable purposes" and certain "employee and compensation levels are maintained." Apr. 2020 IFR, 85 Fed. Reg. at 20813; *see also* 15 U.S.C. § 636m(d)(1).

"[F]orgiveness" of PPP loans "is neither automatic nor guaranteed." *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 424 (2d Cir. 2022). To obtain forgiveness, a borrower must submit a PPP loan forgiveness application and supporting documentation to its lender. *See* 15 U.S.C. § 636m(e)–(f). The lender then determines if the borrower is entitled to forgiveness under the Act, and, if so, submits a request for payment to SBA. *Id.* § 636m(g); *Business Loan Program Temporary Changes; Paycheck Protection Program—Revisions to Loan Forgiveness and Loan Review Procedures Interim Final Rules*, 85 Fed. Reg. 38304, 38306 (June 26, 2020). SBA then remits the appropriate amount to the lender—subject, however, to any SBA review of the loan. 15 U.S.C. § 636m(c)(3); 85 Fed. Reg. at 38306. If a PPP borrower applies for forgiveness in a timely manner, all principal and interest payments are deferred until SBA grants forgiveness or "determines that the loan is not eligible for forgiveness (in whole or in part)." 86 Fed. Reg. 8283, 8288 (Feb. 5, 2021); *see also* 86 Fed. Reg. 3692, 3703 (Jan. 14, 2021).

Under Congress's directive to meet the immediate economic needs of PPP applicants as quickly as possible, SBA set forth a highly streamlined application and underwriting process for obtaining PPP loans. *See* Apr. 2020 IFR, 85 Fed. Reg. at 20812-15. The simplified PPP loan application and underwriting process created a heightened risk of loans being erroneously approved by lenders. To maintain the program's fiscal integrity and to "ensure that PPP loans are directed to the entities Congress intended" and "used for the purposes Congress required," SBA established a series of "procedures and criteria" through which SBA can, after the loans are disbursed, review a borrower's eligibility for a PPP loan, calculation of the loan amount, use of loan proceeds, and entitlement to loan forgiveness. *See Business Loan Program Temporary*

*Changes; Paycheck Protection Program-SBA Loan Review Procedures and Related Borrower and Lender Responsibilities*, 85 Fed. Reg. 33010, 33012 (June 1, 2020). If, in this review process, "SBA determines that a borrower is ineligible for the PPP loan, SBA will direct the lender to deny the loan forgiveness application." *Id.* In the event a borrower mistakenly received loan forgiveness, SBA has reserved the right to claw back such loan forgiveness. *See id.*

If SBA determines that a borrower's forgiveness application should be denied in whole or in part, the borrower can appeal that decision, known as a "Final Loan Review Decision" or "FLRD", to SBA's Office of Hearings and Appeals ("OHA"). *See* 13 C.F.R. § 134.1201(b). This administrative appeals process "must be exhausted before judicial review of a final SBA loan review decision may be sought." *Id.* § 134.1201(d). A borrower appealing an FLRD to OHA must demonstrate that SBA committed a "clear error or fact or law" in issuing the FLRD. 13 C.F.R. § 134.1210. Discovery is not permitted. *Id.* § 134.1209(b). Instead, OHA's review is limited to (1) the administrative record that was before SBA when it issued the FLRD, (2) the borrower's appeal petition, (3) any response, reply, or supplemental pleading, and (4) "filings related to [an] objection to the administrative record." *Id.*; *see* 13 C.F.R. § 134.1207(b) (describing the contents of the administrative record). A "timely appeal by a PPP borrower of a final SBA loan review decision will extend the deferment period of the PPP loan until a final decision is issued" by OHA. 13 C.F.R. § 134.1202(d).

## III. FACTUAL AND PROCEDURAL BACKGROUND

Olen is a corporation based in Newport Beach in the business of "leasing and managing multi-family apartment communities and commercial buildings." Compl., Dkt. 1., ¶¶ 3-4. According to a prior decision by this Court, as of 2012, Igor Olenicoff was "President of Olen Properties Corp, a multi-million dollar real estate company." *Olenicoff v. UBS AG*, No. 8:08-cv-1029-AG-RNB, 2012 WL 1192911, at *2 (C.D. Cal. Apr. 10, 2012). Olen's loan application represents that Olen is 100% owned by the Igor M. Olenicoff 2012 Trust. CAR 1899. As of 2020, Olen had sizeable assets under

management, and nearly all of its income was derived from rent. *See* CAR02411 for specific figures.

On April 14, 2020, Olen applied for a PPP loan of $5,371,920 from its lender, U.S. Bank. CAR 1899-1900. U.S. Bank approved the loan and disbursed the funds to Olen on or around May 6, 2020. CAR01739. On October 28, 2021, Olen applied for forgiveness of that loan. CAR02397-99.

On November 21, 2021, the SBA wrote the lender U.S. Bank indicating that it was reviewing Olen's loan and requested information to be provided within 15 days. CAR01885-86. On December 29, SBA wrote U.S. Bank again, and indicated that based on the SBA's "preliminary review," it was "considering recommending a Full Denial" and requested additional information. CAR01887-92. On January 14, 2022, SBA wrote U.S. Bank again indicating it was still considering a "Full Denial" and requested additional information. On February 2, SBA requested additional information from U.S. Bank. CAR01897-98.

On May 5, 2022, after reviewing the materials it had received regarding Olen's PPP loan, the SBA denied loan forgiveness application because Olen is "an ineligible Passive Entity." CAR00029-30. The denial explained:

> "A review of the 2020 1120 confirms that Olen Properties Corp. owns and operates 39 rental properties identified as apartments complexes and commercial rental properties. Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds (except as Eligible Passive Companies under 13 CFR § 120.111) are not eligible."

CAR00029.

Olen appealed the denial of its loan forgiveness request to the OHA. CAR02391; 13 C.F.R. § 134.1201(b) (authorizing appeals to OHA). An Administrative Law Judge ("ALJ") denied Olen's appeal and affirmed the SBA's denial of loan forgiveness. CAR02380. Olen did not apply for reconsideration. Dkt. 46-1 at 12:10.

On September 3, 2024, Olen filed the present action. Dkt. 1.

## IV. STANDARD OF REVIEW

Under the APA, 5 U.S.C. § 701, *et seq.*, a court may set aside a final agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In assessing whether an agency's decision satisfies this standard, "[courts] ask whether the agency 'considered the relevant factors and articulated a rational connection between the facts found and the choice made.'" *Natural Res. Def. Council v. U.S. Dep't of the Interior*, 113 F.3d 1121, 1124 (9th Cir. 1997) (citation omitted). Under this standard, "[t]he scope of [the Court's] review is narrow; . . . 'a court is not to substitute its judgment for that of the agency.'" *Judulang v. Holder*, 565 U.S. 42, 52-53 (2011) (citation omitted). A court "will not disturb the agency's findings under this deferential standard unless the evidence presented would compel a reasonable finder of fact to reach a contrary result." *Herrera v. U.S. Citizenship & Immig. Servs.*, 571 F.3d 881, 885 (9th Cir. 2009) (citation omitted). An agency decision will be upheld if a court finds "that evidence before the agency provided a rational and ample basis for its decision." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). It should be upheld even if it is "of less than ideal clarity," so long as "the agency's path may reasonably be discerned." *Id.* at 1478 (citation omitted).

"This standard of review is highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1115 (9th Cir. 2007) (internal quotation marks and citation omitted); *see also Peck v. Thomas*, 697 F.3d 767, 772 (9th Cir. 2012); *Providence Yakima Med. Ctr. v. Sebelius*, 611 F.3d 1181, 1190 (9th Cir. 2010). "A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

In APA cases, the Court does not determine whether there are disputed issues of material fact as it would in a typical summary judgment proceeding; its review is based on the administrative record. The Court "is not required to resolve any facts in a review of an administrative proceeding." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985). "Certainly, there may be issues of fact before the administrative agency. However, the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.*

As such, summary judgment motions are not required, and the Court may direct judgment based on its review of the record and briefing. *See* 5 U.S.C. § 706; *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Lands Council v. Powell*, 379 F.3d 738, 743 (9th Cir. 2004), *amended by* 395 F.3d 1019 (9th Cir. 2005); *see also* Joint Rule 26(f) Report, Dkt. 39, at p.5 (citing cases in this District).

## V. ARGUMENT

SBA's decision to deny Olen's PPP loan forgiveness application was reasonable and supported by the record. It was not arbitrary, capricious, an abuse of discretion, or unlawful. 5 U.S.C. § 706(2)(A), (C). SBA considered the evidence submitted by Olen and applied the appropriate standard in determining that Olen was ineligible for forgiveness of its PPP loan. Because SBA reviewed the applicable statutes, regulations, and precedent, and reasonably explained its decision, Olen failed to show that SBA abused its discretion or that it is otherwise entitled to judgment in Olen's favor under the required deferential standard of review.

### A. The SBA's Classification of Olen as a Passive Real Estate Business Is Supported by Substantial Evidence

Olen argues that it is not a passive business. Olen's Memorandum in Support of Motion, Dkt. 46-1 ("Olen Br.") at 14, 15. Olen goes so far as to claim that the ALJ "assume[d]" that Olen was a passive holding company. Yet, in support of this argument—this is an APA-record review case—Olen points to only one page of

evidence in the 2985-page record. Olen Br. at 15:9-11 (citing CAR00357). Olen asserts that "a percentage of its employees manage properties directly on site for properties owned by other entities or properties." *Id*. But Olen fails to explain what percentage of employees or what it means by "other entities or properties." Moreover, the record cite to CAR00357 does not appear to support the assertion, and at the very least is very vague.[3] Regardless, Olen has failed to meet its burden to show in an APA action that the record evidence is overwhelmingly in its favor such that it that it "would *compel* a reasonable finder of fact to reach a contrary result." *Herrera*, 571 F.3d at 885; *see also Anjac Fashion*, 2024 WL 5317303, at *6 (granting judgment for the SBA in a PPP loan forgiveness case where the income statements relied on by plaintiff confirmed the SBA's decision that plaintiff was a passive entity).

In contrast, the record demonstrates that the SBA's determination that Olen is a passive real estate business under Section § 120.110(c) was made in reliance on extensive documentation it received in response to information requests to the lender. *See* CAR00001-5; CAR01885-98. Ongoing notes from the SBA review team reflect the SBA's analysis as it received records from the lender. This analysis is part of the record at CAR00024-27. On April 5, 2022, an SBA reviewer (David Duarte Jr.) noted:

> This loan is part of a larger family of entities related to the principals - most of which appear to be ineligible business activities. Borrower is a vertically integrated real estate development group of entities focused in three major phases of the value chain: (1) Purchase of land/property and development of purchases; (2) Property Management; (3) Long Term Lessors of developed properties. (1) is speculative and (3) is passive - both possibly ineligible. Property Management would be an active and eligible business activity, however, the properties managed are also owned (passive).

CAR00026. The same day, another reviewer (Lakeidra McBride) recommended denial

---

[3] If perhaps Olen was attempting to cite to CAR00356 or 358, it is not clear which line items support Olen's assertion or in what way.

based on a review of the PPP loan forgiveness application and documents submitted with the application, the forgiveness decision submitted by the lender, contractor reports on the loan, and documents submitted by the lender in connection with this loan review. CAR00025. Then on April 6, yet another reviewer (Harold L. Byes) concurred with denial. CAR00024. Finally, on May 5, another reviewer (Sigmund Pannu) entered a "denial concurrence," pointing to the more than 39 apartment complexes and commercial properties identified in Olen's records as well as the huge amount of depreciable assets identified in Olen's tax returns. CAR00024.

The ALJ, like the agency, reviewed the records and found that the evidence supported the SBA's decision that Olen was passive business not eligible for a PPP loan. The ALJ pointed to Olen's very statements in its briefing to the ALJ, that Olen's "primary business is leasing and management of multi-family apartment communities and commercial buildings." CAR02391 (Olen's brief to ALJ); CAR02388 (ALJ decision). The ALJ also considered Olen's argument that its tax returns show it was not a passive entity. But as the ALJ rightly found, those very same tax returns self-identify Olen's "business activity code number as 531110, the business activity as 'lessor' of 'real property.'" CAR02388 (ALJ decision); CAR02983-85 (tax returns submitted by Olen with its brief and reviewed by ALJ).[4] The ALJ correctly noted that "all of [Olen's] affiliates with employees[] have the same [] code, 531110." *Id.*

The ALJ correctly reviewed the record, weighed the alternative evidence highlighted by Olen, and came to a reasoned conclusion. The ALJ's decision should be

---

[4] According to the North American Industry Classification System ("NAICS") website's explanation of code 531120: "This industry comprises establishments primarily engaged in acting as lessors of buildings (except miniwarehouses and self-storage units) that are not used as residences or dwellings. Included in this industry are: (1) owner-lessors of nonresidential buildings; (2) establishments renting real estate and then acting as lessors in subleasing it to others and (3) establishments providing full service office space, whether on a lease or service contract basis. The establishments in this industry may manage the property themselves or have another establishment manage it for them." https://www.naics.com/naics-code-description/?code=531120#:%7E:text=NAICS%20Code%3A%20531120%20Lessors%20of,(except%20Miniwarehouses)%20%7C%20NAICS%20Association.

upheld so long as the "evidence before the agency provided a rational and ample basis for its decision." *Nw. Motorcycle Ass'n*, 18 F.3d at 1471. The evidence here does not compel a finding that the SBA's denial, or the ALJ's affirmance, were arbitrary or capricious.

As much as Olen disputes that it is a passive entity, it cannot dispute that it is primarily engaged in the business of managing real estate or that nearly all its income is derived from rent. The fact that as a landlord Olen employs personnel to respond to maintenance requests or other tenant issues (such as leasing or collecting late rent) does not alter the fact that all of its income is rental income. The evidence in the record supports that the SBA offered a rational explanation for its decision denying loan forgiveness because Olen is an ineligible business under 13 C.F.R. § 120.110(c). *See Anjac Fashion*, 2024 WL 5317303, at *5 (plaintiff "takes issue with the evidence the SBA relied on when making its decision, but [] does not explain why it views such reliance to be arbitrary and capricious.").

**B. The ALJ's Reliance on SBA's 2019 Standard Operation Procedures Was Not Arbitrary, Capricious, or an Abuse of Discretion**

Olen argues that the ALJ's analysis and reliance on the SBA's 2019 Standard Operation Procedures ("SOP") was in error. Olen Br. at 13-15. But Olen's argument is flawed as it is based on a fundamental misunderstanding of the role of the ALJ in the administrative appeal. As the ALJ explained in its decision:

> Appellant has cited to regulations, case law and other authority which it argues support the position taken. … In this decision the undersigned will not discuss the authorities cited or rule on the issue. As an ALJ with OHA presiding over appeals on behalf of SBA, I am bound by SBA regulations and interpretations. I do not have the authority to invalidate SBA's interpretation of, and rules and regulations promulgated to implement, the CARES Act. Specifically, I do not have authority to rule that SBA did not have authority to issue SBA's First Interim Final Rule (IFR) which is determinative on the

> issue in this case. … Appellant seeks to have me invalidate that IFR and implementing guidelines, as to which I am unable to do. To get full consideration of that issue Appellant must seek review by a federal district court.

CAR02387 (citations omitted). As the ALJ wrote, Olen may argue in district court that the SBA exceeded its authority and incorrectly interpreted the intent of Congress in enacting the CARES Act in the district court, as it is doing in this action (*see* below). But to assert that the ALJ was in error because it relied on the SBA's SOP is wrong and Olen cites no case for that position. *Cf.* 5 U.S.C. § 556(c) (under APA, employee presiding at agency hearings are "[s]ubject to published rules of the agency and within its powers."); *Ramspeck v. Fed. Trial Examiners Conf.*, 345 U.S. 128, 132 (1953) ("hearing examiners [are]… semi-independent subordinate hearing officers"). Moreover, the argument mischaracterizes the ALJ's analysis, which also cites Section 120.110(c). CAR02388 (ALJ decision); 13 C.F.R. § 120.110(c) ("Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds.").

### C. The Application of the Long-standing Passive Business Rule to Olen's PPP Loan Forgiveness Application Was Not Arbitrary, Capricious, or Contrary to the CARES Act

Olen contends that SBA overstepped its authority under the CARES Act to exclude passive businesses like Olen from PPP loan forgiveness because the phrase "any business concern" under 15 U.S.C. § 636(a)(36)(D)(i) should be read broadly. Olen Br. at 15-17. Olen argues that the phrase "any business concern" means every business concern is eligible for a PPP loan if they meet the 500-employee threshold, regardless of whether any eligibility exclusion in Section 120.110 applies.

But Olen's contrary position is flawed, because it views § 636(a)(36)(D)(i) in isolation, without considering the statutory scheme as a whole. *See Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 289-290 (2010).

Understood in context, the terms of § 636(a)(36)(D)(i) do not prevent SBA from denying PPP loan forgiveness to passive real estate companies, in accordance with Section 120.110(c).

The CARES Act explicitly places the PPP under SBA's existing Section 7(a) loan program, and states that PPP loans are to be provided "under the same terms, conditions, and processes" as other Section 7(a) loans except as provided by the terms of the CARES Act itself. 15 U.S.C. § 636(a)(36)(B); *see Pharaohs GC, Inc. v. United States Small Bus. Admin.*, 990 F.3d 217, 224, 227 (2d Cir. 2021); *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1249, 1256 (11th Cir. 2020); *Diocese of Rochester v. SBA*, 466 F. Supp. 3d 363, 375-76 (W.D.N.Y. June 10, 2020). The Act then enumerates several restrictions applicable to ordinary Section 7(a) loans that may not be applied to PPP loans. For example, non-profits are ineligible for Section 7(a) loans under 13 C.F.R. § 120.110(a), but § 636(a)(36)(D)(i) expressly permits them to receive PPP loans. Congress did not, however, waive or relax the passive business restriction of Section 120.110(c). It thus follows from the express terms of § 636(a)(36)(B) that SBA may continue to apply its longtime rule against loans to passive businesses. *See Pharaohs*, 990 F.3d at 227; *Gateway Radiology*, 983 F.3d at 1256-57.[5]

Olen's precise argument—that the "any business concern" language in the CARES Act should be read broadly and in isolation—has been rejected by the Eleventh Circuit and Second Circuit. In *Gateway Radiology*, the Eleventh Circuit considered the language in the CARES Act placing the PPP loan program within the pre-existing framework of the Section 7(a) loan program, including the rules and lending criteria promulgated by the SBA in connection with that program. *Gateway*, 983 F.3d at 1256. The court noted that the CARES Act expanded eligibility with respect to some borrowers

---

[5] Because the language of the CARES Act is unambiguous—that the SBA Administrator has discretion to guarantee PPP loans "under the same terms, conditions, and processes" as 7A loans—it is not necessary to consider the rules of interpretating an ambiguous statute under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires.").

but did not change other pre-existing eligibility and lending requirements. *Id.* at 1258. The court concluded that Congress had granted the SBA discretion to adopt the pre-existing Section 7(a) eligibility and lending criteria into the PPP, as long as the agency's actions did not conflict with the CARES Act. *Id.* at 1257. The court further explained:

> [I]t would be illogical to conclude that this subsection of the CARES Act sets size as the one and only requirement for PPP eligibility. It would be illogical because other sections of the CARES Act waive or relax for PPP loans other § 7(a) eligibility requirements. If the sole eligibility requirement were size, then those other provisions would be pointless. We try hard not to interpret statutory provisions in a way that will result in them having no purpose or effect.

*Id.* at 1258 (internal citations omitted); *see also Bruckner Truck Sales, Inc. v. Guzman*, 148 F.4th 341, 346 (5th Cir. 2025) (explaining in a PPP action: "We do not lightly embrace interpretations of legal texts that result in 'absurd consequences,' or 'create[] a massive loophole.'") (citations omitted).

The Second Circuit reached a similar conclusion in *Pharaohs*: "Reading subparagraph D in the context of the SBA's 7(a) loan program, it is clear that [Plaintiff's] interpretation—i.e., 'any business concern' means 'every business concern'—is not tenable." *Pharaohs*, 990 F.3d at 227; *see also DACO Invs., LLC v. United States Small Bus. Admin.*, 2024 WL 750594, at *11 (W.D. La. Feb. 22, 2024), *appeal dismissed sub nom. DACO Invs., L.L.C. v. United States Small Bus. Admin.*, 2024 WL 4815010 (5th Cir. Oct. 3, 2024) ("the SBA's decision to apply the exclusions in Section 120.110 to the PPP … did not violate CARES Act.").

Olen's statutory argument primarily relies on two decisions: *DV Diamond Club of Flint, LLC v. Small Business Administration*, 960 F.3d 743 (6th Cir. 2020) and *National Association of Home Builders v. United States Small Business Administration*, 2021 WL 4458660 (E.D. Mich. Sept. 28, 2021) (vacated and remanded). Both decisions adopted an expansive interpretation of the word "any" without addressing how their

interpretations worked within the overall statutory scheme. Moreover, *DV Diamond Club* was not a final decision on the merits as it was a decision in response to SBA's motion to stay a preliminary injunction. *See DV Diamond Club*, 960 F.3d at 745-747. As such, *DV Diamond* and *N.A. Home Builders* represent the minority view. One district court explained in rejecting the minority view: "Unlike those two decisions, but like several others, this Court finds significant that the PPP 'was added into the existing § 7(a) program' and thus its provisions should be interpreted in light of Congress' broad grant of authority to the SBA reflected in the existing statutory scheme." *Forest View Rehab. & Nursing Ctr., LLC v. United States Small Bus. Admin.*, 2024 WL 5247837, at *8-9 (N.D. Ill. Dec. 30, 2024); *see also Diocese of Rochester*, 466 F. Supp. 3d at 375 ("The reasoning employed by the DV Diamond court, among others, is not unpersuasive on its face.").

The Court should reach the same conclusion here and find that SBA's denial of Olen's loan forgiveness application pursuant to Section 120.110(c) was not arbitrary, capricious, or in violation of the CARES Act.

## VI. CONCLUSION

The ALJ articulated a rational connection between the evidence in the Certified Administrative Record and its conclusion that the SBA correctly denied Olen's application for loan forgiveness. Under the deferential standard of review in an APA action, the Court should uphold the ALJ's decision and SBA's denial and grant judgment for Defendant.

Dated: October 24, 2025

Respectfully submitted,

BILAL A. ESSAYLI
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

*/s/ Paul (Bart) Green*
PAUL (BART) GREEN
Assistant United States Attorney

Attorneys for Defendants

Certificate of Compliance with L.R. 11-6.2

The undersigned, counsel of record for the Defendants, certifies that this brief contains 5,805 words, which complies with the word limit of L.R. 11-6.1, and fewer than 25 pages, which complies with the Court's Standing Order.

Dated: October 24, 2025

*/s/ Paul (Bart) Green*
PAUL (BART) GREEN